_____

No. 95-3299
_____

United States of America,          *
                                    *
         Appellee,                  *
                                    *
    v.                              *
                                    *
Darwin Thomas Bordeaux,             *
                                    *
         Appellant.                 *

_____

No. 95-3317                         Appeals from the United States
_____                         District Court for the
                                    District of South Dakota.

United States of America,          *
                                    *
         Appellee,                  *
                                    *
    v.                              *
                                    *
Augustin White Horse,              *
                                    *
         Appellant.                 *

_____

Submitted: March 14, 1996

Filed: June 10, 1996
_____

Before FAGG, JOHN R. GIBSON, and WOLLMAN, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Darwin Thomas Bordeaux and Augustine White Horse were convicted in the district court[1] of kidnapping, in violation of 18 U.S.C. §§ 2, 1153, and 1201(a)(2), and of voluntary manslaughter,

_____

[1]The Honorable John B. Jones, United States District Judge for the District of South Dakota.

in violation of 18 U.S.C. §§ 2, 1153, and 1112.  Both appeal their convictions of the kidnapping charge and the denial of their motions to sever the trial.  White Horse also appeals the district court's[2] imposition of a sentencing enhancement for a vulnerable victim.  We affirm.

## I.

On January 16, 1993, Bordeaux and White Horse attended a drinking party at a residence in Mission, South Dakota, located within the Rosebud Indian Reservation.  Codefendants Willis E. Dickson, Jr. and Daniel Anthony Provancial also attended the party.  The four left the party together the next morning in Dickson's car, picked up a male juvenile at the residence of an acquaintance, and continued driving around.  Sometime after 6:30 a.m., the occupants of the car observed Dale Williams walking along the road.  Williams was wearing the leg brace he regularly wore because of an accident he had suffered several years earlier.  One of the group members offered Williams a ride.  Williams accepted, saying that he was going to his mother's house.

Dickson instead drove to his own house, where all of the members of the group got out of the car and started kicking and hitting Williams as he attempted to leave the area.  After kicking and beating Williams for several minutes, laughing and cheering all the while, the members of the group put Williams back into the car and drove to an isolated location east of Mission.  Williams was removed from the car and again was kicked and beaten with fists and with a small baseball bat, which the members of the group took turns using.  White Horse broke the bat over Williams' head, whereupon the members of the group struck Williams with the broken pieces. Williams was then put into the trunk of the car, and the

---

[2]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

-2-

members of the group drove back to Dickson's home. Dickson, Provancial, and White Horse left Bordeaux and the juvenile in the car. Bordeaux got out of the car and, pursued by the juvenile, ran to the home of an acquaintance.

Dickson's father, who lived directly behind Dickson, got into the car to move it and heard Williams in the trunk. Dickson's father opened the trunk and got Williams out. Ultimately, an ambulance was summoned. Williams went into cardiac arrest while being transported to the Indian Health Service Hospital in Rosebud, South Dakota, where he died soon after as a result of the injuries inflicted upon him by the members of the group.

White Horse, Bordeaux, Provancial, and Dickson were charged with kidnapping and second-degree murder. All four defendants filed motions for severance. The magistrate judge[3] denied the motions. Provancial and Dickson pled guilty to a superseding information charging voluntary manslaughter and agreed to testify at trial. The juvenile pled guilty to an information charging him with becoming a juvenile delinquent and likewise agreed to testify at trial. Bordeaux and White Horse were tried together on the charges described above and were found guilty of kidnapping and voluntary manslaughter.

The sentencing court departed downward to sentence Bordeaux to 63 months' imprisonment and five years' supervised release. The court gave White Horse an upward adjustment pursuant to U.S.S.G. § 3A1.1, finding that White Horse knew or should have known that the victim was unusually vulnerable, and sentenced him to 188 months' imprisonment and three years' supervised release.

---

[3]The Honorable Mark A. Moreno, United States Magistrate Judge for the District of South Dakota.

Both Bordeaux and White Horse appeal the magistrate's order denying severance and challenge the sufficiency of the evidence to support the kidnapping convictions.  White Horse also appeals the upward adjustment in his sentence.

## II.

Generally, we will review a district court's refusal to grant severance for an abuse of discretion that resulted in clear prejudice. United States v. Lucht, 18 F.3d 541, 553 (8th Cir.), cert. denied, 115 S. Ct. 363 (1994).  Defendants who do not give the district court the opportunity to rule on the severance question in its concrete form are entitled to only plain error review.  United States v. Dobin, 938 F.2d 867, 869 (8th Cir. 1991).  Under this standard, in addition to an abuse of discretion, a defendant must show prejudice affecting his substantial rights and an extraordinary reason to reverse.  Id.  Because Bordeaux renewed his motion for severance at the time he moved for judgment of acquittal or new trial, we conclude that he preserved the issue for plenary review.  White Horse did not renew his motion, however, and the district court was thus not given an opportunity to rule on the motion at any time after the exact nature of Bordeaux's testimony was known.  Thus, we review the magistrate judge's denial of White Horse's motion for plain error.

Under either standard, we find that the district court did not err in denying the motions for severance.  Two or more defendants may be charged in the same indictment if they are alleged to have participated in the same offense.  Fed. R. Crim. P. 8(b).  There is a preference for joint trials of defendants who are charged together.  United States v. Shivers, 66 F.3d 938, 939 (8th Cir.) (per curiam) (citing Zafiro v. United States, 506 U.S. 534, 537 (1993)), cert. denied, 116 S. Ct. 581 (1995).  Disparity in the weight of the evidence between the codefendants is not a sufficient reason for severance.  United States v. Blum, 65 F.3d 1436, 1444

(8th Cir. 1995), <u>cert. denied</u>, 116 S. Ct. 824 (1996). Even the fact that defendants may have antagonistic defenses in which one defendant attempts to shift the blame to the other is not a sufficient reason for severance. <u>United States v. Mason</u>, 982 F.2d 325, 328 (8th Cir. 1993). To show clear prejudice, a defendant must show that his defense was irreconcilable with that of the codefendant or that the jury was unable to compartmentalize the evidence. <u>Shivers</u>, 66 F.3d at 940.

Although Bordeaux and White Horse claim that their defenses were irreconcilable, we conclude that they were not. Bordeaux contended that he was coerced into participating by the other members of the group, but he testified that Dickson was mainly responsible for the coercion. He testified that at one point White Horse may have yelled at him to kick Williams, but he did not know the voices well and the voice could have been Dickson's. White Horse's defense was that he was not involved and that Dickson, Provancial, and the juvenile had attempted to shift the blame to him in order to get reduced sentences. The jury did not need to disbelieve one defense in order to believe the other. The jury could have believed both that the three defendants who had pled guilty were responsible for setting White Horse up and that they coerced Bordeaux into committing the offense. In fact, the jury disbelieved both defenses.

This was not a complex case. There were only two defendants, two counts each, and no complex issues. Accordingly, we conclude that the jury was able to compartmentalize the evidence. <u>See</u> <u>Blum</u>, 65 F.3d at 1444. Thus, the district court did not abuse its discretion in denying the motions to sever.

## III.

Both defendants also argue that the evidence was insufficient to support their kidnapping convictions. In reviewing such a

-5-

claim, we will examine the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences. We will overturn the verdict only if a reasonable jury must have had a reasonable doubt that the defendant was guilty of one of the essential elements of the offense. United States v. Suppenbach, 1 F.3d 679, 681-82 (8th Cir. 1993).

White Horse and Bordeaux contend that the evidence was insufficient to convict them of kidnapping because the government did not prove that Williams was held for "ransom or reward or otherwise," as required by 18 U.S.C. § 1201(a). We have noted that the "or otherwise" requirement has been broadly interpreted and have held that it is met if the person kidnapped was taken for some reason that the defendant considered of sufficient benefit to him, or for "`some purpose of his own.'" United States v. Eagle Thunder, 893 F.2d 950, 953 (8th Cir. 1990) (quoting United States v. Melton, 883 F.2d 336, 338 (5th Cir. 1989)).

It was reasonable for the jury to infer that the purpose of the kidnapping was to assault Williams and that he was put back in the car to enable the defendants to continue the assault at a more isolated location and thus prevent detection. Both reasons constitute a sufficient benefit to the defendants. The fact that Williams originally got into the car without being forced did not prevent the asportation from turning into a kidnapping, as Williams believed he would be taken to his mother's home and force was later used to confine him. See United States v. Redmond, 803 F.2d 438, 439 (9th Cir. 1986) (fact that victim originally accompanies another consensually does not prevent kidnapping where force later used to seize or confine victim), cert. denied, 481 U.S. 1032 (1987).

Bordeaux also argues that because he did not personally seize or hold Williams, the evidence was insufficient to convict him of kidnapping. Bordeaux was charged both as a principal and as an

aider and abettor under 18 U.S.C. § 2. Under this statute, the acts of the principal become those of the aider and abettor as a matter of law. United States v. Simpson, 979 F.2d 1282, 1285 (8th Cir. 1992) (citing Pereira v. United States, 347 U.S. 1, 9-10 (1954)), cert. denied, 507 U.S. 943 (1993). An individual who takes part in a criminal offense with others may not isolate his involvement to avoid responsibility for a more serious offense committed by the group. United States v. Felix, 996 F.2d 203, 207-08 (8th Cir. 1993).

There was testimony that Bordeaux was in the car when Williams was offered a ride, that he took part in the beatings both at Dickson's residence and outside town, and that after Williams was placed back into the car Bordeaux sat next to him and occasionally hit him in the back of the head, saying, "[y]ou don't mess with the boys." Although there was testimony to the effect that Bordeaux participated only to the extent he felt he had to, the jury obviously did not accept his coercion defense. After Bordeaux left the group, he made no effort to get any assistance for Williams. From this evidence, the jury could reasonably infer that Bordeaux was a willing participant, or at least that he aided and abetted the group, in holding Williams.

## IV.

White Horse argues that the district court erred in increasing his base offense level two levels for a vulnerable victim under U.S.S.G. § 3A1.1. A defendant's offense level is increased two levels "[i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to criminal conduct." U.S.S.G. § 3A1.1. Such an adjustment is appropriate where the choice of victim shows an "extra measure of criminal depravity." United States v. Cron, 71 F.3d 312, 314 (8th Cir. 1995) (internal quotations omitted). White

Horse argues that he did not know Williams, that he did not know that Williams was physically disabled, and that he did not target Williams because of his disability.

We review a district court's factual determination that there was a vulnerable victim for clear error. United States v. Coates, 996 F.2d 939, 942 (8th Cir. 1993). Williams' brother testified that Williams wore a leg brace, that he "walked with a real, real distinct limp," and that he could not easily get up after he had fallen down. He also testified that White Horse knew Williams because they were distantly related and had been at the same house on many occasions. Williams' mother also submitted a letter stating that she believed that White Horse knew her son. We conclude, therefore, that the district court's factual finding that White Horse knew Williams or that he would have seen Williams' disability before White Horse and his colleagues picked him up and in the course of the beating is not clearly erroneous.

We have held that the defendant must have actually chosen the victim as a target for the crime because of the victim's handicap. See United States v. Callaway, 943 F.2d 29, 31 (8th Cir. 1991) (citing United States v. Cree, 915 F.2d 352, 354 (8th Cir. 1990)). Because of Williams' limp and leg brace, he was unable to run away during the beatings. There was testimony that White Horse told Dickson to pull over when they first saw Williams, that White Horse was the first person to hit Williams, and that at one point Williams tried to get up and White Horse kicked him in the leg to cause him to fall back down. The district could readily infer from this evidence that White Horse targeted Williams because of his handicap.

White Horse has moved to remand the case to the district court for the purpose of filing a motion for a new trial based on newly discovered evidence. We deny the motion without prejudice to the filing of a motion for a new trial in the district court. See Fed.

R. Crim. P. 33.

The judgment and sentence are affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.