# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3687

_____

United States of America

*Plaintiff - Appellee*

v.

Robert Ford

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: May 17, 2013
Filed: Augsut 8, 2013

_____

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Robert Ford was charged with sexual abuse of an incapacitated person, in violation of 18 U.S.C. §§ 2242(2), 2246(2)(A), and 1152 ("Count 1") and kidnapping, in violation of 18 U.S.C. §§ 1201(a)(2) and 1152 ("Count 2"). A jury acquitted Ford of sexual abuse but convicted him of kidnapping. On appeal, Ford contends that his acquittal on the sexual abuse count requires an acquittal on the kidnapping count as

a matter of law. He argues that the district court[1] erred in issuing two supplemental jury instructions and in denying his motions for judgment of acquittal and for a new trial. We affirm.

## I. *Background*

On the night of June 29, 2011, Christina Weston, her cousin, Eric Sherman, her friend, Shelly Red Earth, and her former romantic interest, Ford, consumed alcohol and fell asleep at Weston's house. Sherman testified that the next morning he and Red Earth heard a "muffled commotion" coming from Weston's bedroom. When Sherman went to investigate, he encountered Ford, who had just exited Weston's bedroom and shut the door. Ford looked upset and said, "Your cousin is having a fit, an attack. You better go check on her." Sherman knocked on the door and went into Weston's room where he found her traumatized. She was seated on the floor with her legs curled up, rocking back and forth and sobbing. Sherman observed red marks on Weston's arms that had not been there the night before. When Sherman asked Weston what happened, Weston pointed to the door and said, "That f*****g Bob," referring to Ford. Sherman then went to look for Ford, but he had departed. Weston was taken to the hospital. After hospital staff physically examined Weston, she told them that she had been barricaded in her room and sexually assaulted. Ford's DNA was present on swabs taken from Weston at the hospital.

A grand jury indicted Ford, charging him with sexual abuse of an incapacitated person and kidnapping. Ford pleaded not guilty, and a jury trial was held. At the close of the evidence, the court instructed the jury on both counts. The instructions for Count 1 stated, in pertinent part:

---

[1]The Honorable Karen E. Schreier, Chief Judge, United States District Court for the District of South Dakota.

For you to find Robert Ford guilty of Count 1 of the indictment, the prosecution must prove the following five essential elements beyond a reasonable doubt:

*One*, that on or about June 30, 2011, Robert Ford did knowingly engage in or attempt to engage in a sexual act with Christina Weston;

\* \* \*

*Two*, that Christina Weston was incapable of appraising the nature of the conduct, or alternatively was physically incapable of declining participation in or communication unwillingness to engage in the sexual act;

*Three*, that Robert Ford knew that Christina Weston was incapable of appraising the nature of the conduct, or alternatively was physically incapable of declining participation in or communicating unwillingness to engage in the sexual act;

*Four and five*, that Christina Weston is an Indian; and that the offense took place in Indian Country, namely at Flandreau, in Indian Country, in the District of South Dakota.

The instructions for Count 2 stated, in pertinent part:

For you to find Robert Ford guilty of Count 2 of the indictment, the prosecution must prove the following four essential elements beyond a reasonable doubt:

*One*, Robert Ford unlawfully seized or confined Christina Weston without her consent;

*Two*, Robert Ford held Christina Weston for the purpose of preventing her from reporting a sexual attack;

*Three and four*, that Christina Weston is an Indian; and that the offense took place in Indian Country, namely at Flandreau, in Indian Country, in the District of South Dakota.

During the course of its deliberations, the jury sent three questions to the court. The first question was, "Do we have to prove guilty on Count 1 to find guilty on Count 2?" After entertaining arguments from counsel, the court sent the following supplemental instruction to the jury:

> As you were instructed in Final Instruction Number Three, the jury needs to find that Robert Ford held Christina Weston for the purpose of preventing her from reporting a sexual attack. This element, along with all the other elements, must be proven beyond a reasonable doubt to find the Defendant guilty on Count Two. To find the Defendant guilty on Count Two, you do not need to find the Defendant guilty on Count One.
>
> This instruction should be taken together with the instructions I previously gave to you. The instructions must be considered as a whole.

Ford did not object to the supplemental instruction.

Later, the court received a second question from the jury specifically concerning the first element of Count 2. It asked, "On Count 2, can we have a further definition of 'unlawfully seized or confined' without her consent?" After entertaining arguments from counsel on this instruction, the court submitted the following supplemental instruction to the jury:

> The victim's lack of consent is a fundamental element of kidnapping. Kidnapping implies an unlawful physical or mental restraint or detention for an appreciable period of time against the person's will and with a willful intent to confine or detain the victim.

This instruction should be taken together with the instructions I previously gave to you. The instructions must be considered as a whole.

Ford did not object to the second supplemental instruction. However, at that time Ford's counsel did ask the court to consider clarifying the first supplemental instruction. Ford's counsel argued:

> If [the jury] would acquit on Count 1 . . . factually speaking, it would be impossible, as a matter of law, [for Ford] to be convicted on Count 2 in the absence of a sexual assault. Again, like I mentioned earlier, the sexual assault is a condition precedent to confinement to prevent the reporting of a sexual assault.

Counsel for the government disagreed. The court construed Ford's counsel's argument as an objection, ruled that it was untimely, and stated that even if it were timely, he would have overruled it because "[t]he counts are distinct. There's nothing that requires in a kidnapping case that there be a conviction on another matter."

After another jury question and answer not relevant to this appeal, the jury returned a verdict acquitting Ford of sexual abuse but convicting him on kidnapping. Ford filed motions for judgment of acquittal and for a new trial. The district court denied both motions. *United States v. Ford*, No. CR 11-40116-01-KES, 2012 WL 4443000, at \*4 (D.S.D. Sept. 25, 2012) (unpublished).

## II. *Discussion*

On appeal, Ford argues that the district court erred in issuing the supplemental jury instructions and in denying his motions for judgment of acquittal and for a new trial.

## A. *The Supplemental Jury Instructions*

Ford argues that the district court's first supplemental instruction was plainly erroneous because it told the jury that it was not necessary to convict Ford of sexual abuse in order to convict him of kidnapping. He contends that the jury could not have found the second element of the kidnapping count—that "[he] held Christina Weston for the purpose of preventing her from reporting a sexual attack"—beyond a reasonable doubt after acquitting him on the sexual abuse count. Ford also argues that the district court's second supplemental instruction was plainly erroneous because it implied that kidnapping requires only an unlawful seizure or detention.

> A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate. An opportunity must be given to object out of the jury's hearing and, on request, out of the jury's presence. Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b).

Fed. R. Crim. P. 30(d). "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b). "Plain error review requires [the defendant] to show (1) an error, (2) that was 'plain,' (3) 'affects substantial rights,' and (4) 'the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Rush-Richardson*, 574 F.3d 906, 910 (8th Cir. 2009) (quoting *United States v. Olano*, 507 U.S. 725, 735–36 (1993)).

The district court did not plainly err in issuing the first supplemental jury instruction. The jury could have validly concluded that Ford was guilty of kidnapping despite concluding that he was not guilty of sexual abuse. To convict Ford on the

sexual abuse count, the jury had to find all five elements of the offense beyond a reasonable doubt. Excluding the fourth and fifth elements, which concern jurisdiction, the jury might have reasonably doubted any or all of the remaining contested elements. These elements required proof that (1) "Ford . . . knowingly engage[d] in or attempt[ed] to engage in a sexual act with . . . Weston;" (2) either "Weston was incapable of appraising the nature of the conduct, or alternatively [that she] was physically incapable of declining participation in or communicating unwillingness to engage in the sexual act;" and (3) either "Ford knew that . . . Weston was incapable of appraising the nature of the conduct, or alternatively [that he knew that she] was physically incapable of declining participation in or communicating unwillingness to engage in the sexual act." *See* 18 U.S.C. § 2242(2). A jury finding of reasonable doubt on any one of those three elements would require acquittal. Thus, it is entirely possible that the jury found beyond a reasonable doubt that "Ford . . . knowingly engage[d] in or attempt[ed] to engage in a sexual act with . . . Weston," but it still acquitted him on the sexual abuse count because it reasonably doubted whether Weston was incapacitated in some way or whether Ford knew that Weston was incapacitated.

Even if we assume that the jury reasonably doubted that "Ford . . . knowingly engage[d] in or attempt[ed] to engage in a sexual act with . . . Weston," that reasonable doubt does not foreclose a finding that he kidnapped Weston. First, the kidnapping count does *not* include as an element that "Ford . . . knowingly engage[d] in or attempt[ed] to engage in a sexual act with . . . Weston." To be sure, the kidnapping count, as charged, does include as an element that "Ford held . . . Weston for the purpose of preventing her from reporting a sexual attack." *See* 18 U.S.C. § 1201(a)(2) (requiring a kidnapping to be "for ransom or reward or otherwise"). But the presence of reasonable doubt on the former does not require reasonable doubt on the latter. Specifically, a reasonable jury could have doubted that the government proved that a sexual attack occurred, but nonetheless found beyond a reasonable doubt that Ford believed that Weston intended to report that one *had* occurred, and

that he held her to prevent her from doing so. Second, even if the jury's findings were logically inconsistent, "[c]onsistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment." *United States v. Powell*, 469 U.S. 57, 62 (1984) (quotations and citations omitted). In *Powell*, the Supreme Court

> note[d] that a criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts. . . . The Government must convince the jury with its proof, and must also satisfy the courts that given this proof the jury could rationally have reached a verdict of guilty beyond a reasonable doubt. We do not believe that further safeguards against jury irrationality are necessary.

*Id.* at 67.[2]

Ford argues that the second supplemental instruction was erroneous because it implied that kidnapping requires only an unlawful seizure or detention. He argues that this instruction failed to instruct the jury that finding that he had "the purpose of preventing [Weston] from reporting a sexual assault" was just as important as finding that he "unlawfully seized or confined" her. The first paragraph of the court's second supplemental instruction states, "The victim's lack of consent is a fundamental element of kidnapping. Kidnapping implies an unlawful physical or mental restraint or detention for an appreciable period of time against the person's will and with a willful intent to confine or detain the victim." This supplemental instruction adequately elaborated the "unlawfully seized or confined" element. *See* 18 U.S.C. § 1201(a). The instruction remained correct despite not restating all of the elements of the kidnapping count. Furthermore, the court was careful to include a second paragraph, stating, "This instruction should be taken together with the instructions I previously gave to you. The instructions must be considered as a whole." The original

---

[2]See *infra* Part II.B. for a review of Ford's sufficiency challenge.

instructions for the kidnapping count state, "For you to find Robert Ford guilty of Count 2 of the indictment, the prosecution must prove *the following four essential elements* beyond a reasonable doubt . . . ." (Emphasis added). "[J]uries are presumed to be able to follow and understand the court's instructions." *Katzenmeier v. Blackpowder Prods., Inc.*, 628 F.3d 948, 952 (8th Cir. 2010) (citing *United States v. Sandstrom*, 594 F.3d 634, 645 (8th Cir. 2010)). Any erroneous inference from the supplemental instruction's explanation of the "unlawfully seized or confined" element, or its use of the word "fundamental" to describe that element, was addressed by the court's admonitions to the jury that it must read the instructions as a whole and find every essential element beyond a reasonable doubt.

Consequently, we hold that the district court's supplemental instructions were not erroneous, much less plainly so.

B. *Motion for Judgment of Acquittal*

Ford argues that the district court erred in denying his post-verdict motion for judgment of acquittal on the kidnapping count. Ford contends that his acquittal on the sexual abuse count shows that insufficient evidence existed to convict him on the kidnapping count as well. Ford argues that the government failed to prove that he held Weston for the purpose of obtaining some benefit to himself and, specifically, that the government presented no evidence that he attempted to prevent Weston from reporting a sexual attack.

> A post-verdict motion for judgment of acquittal puts in issue the sufficiency of the evidence to sustain the verdict. It is in this respect precisely like an appeal from a judgment of conviction on the ground that the evidence was not sufficient to sustain the verdict on which the judgment was entered.

*United States v. Lincoln*, 630 F.2d 1313, 1316 (8th Cir. 1980).

-9-

We review the denial of a motion for judgment of acquittal de novo. [*United States v.*] *Hively*, 437 F.3d [752,] 760 [(8th Cir. 2006)]. When a motion for judgment of acquittal is based on evidentiary insufficiency, we "view[ ] the evidence in the light most favorable to the verdict" and "must uphold the verdict if the evidence so viewed is such that there is an interpretation of the evidence that would allow a reasonable-minded jury to find the defendants guilty beyond a reasonable doubt." *United States v. Vig*, 167 F.3d 443, 447 (8th Cir. 1999).

*United States v. Lewis*, 557 F.3d 601, 612 (8th Cir. 2009) (fourth alteration in original).

The federal kidnapping statute imposes criminal liability upon "[w]hoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person." 18 U.S.C. § 1201(a). Of particular relevance in the present case is the "or otherwise" element. *Id.* "We have noted that the 'or otherwise' requirement has been broadly interpreted and have held that it is met if the person kidnapped was taken for some reason that the defendant considered of sufficient benefit to him, or for '"some purpose of his own."'" *United States v. Bordeaux*, 84 F.3d 1544, 1548 (8th Cir. 1996) (quoting *United States v. Eagle Thunder*, 893 F.2d 950, 953 (8th Cir. 1990) (quoting *United States v. Melton*, 883 F.2d 336, 338 (5th Cir. 1989))).

Here, the district court stated:

Ford argues that the jury could not have reasonably concluded that he held the victim for the purpose of preventing her from reporting a sexual attack because the jury found Ford not guilty of the charged sexual assault. Put differently, Ford contends that the victim could not have intended to report a sexual attack because according to the jury verdict, no sexual attack took place. Ford's reasoning is flawed because he implicitly argues that in order for one to report an alleged crime against a defendant, or at least to have the intent to do so, the defendant

-10-

must be guilty of the alleged crime. Ford cites no case law to support his position[,] and the court finds that his position is not true either logically or practically. An individual can report what he or she perceives to be a crime even if no actual crime took place. To conclude otherwise would undermine the role of criminal investigations and the judicial process as a whole. Hence, the court finds that Ford's argument that a not guilty verdict for the sexual assault charge precludes a guilty verdict for the kidnapping charge lacks merit.

Ford also argues that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he had the necessary intent to commit a kidnapping, namely that he held the victim for the purpose of preventing her from reporting a sexual attack. Here, after hearing all the evidence, the jury reasonably concluded that the victim intended to report a sexual attack at the time [that] Ford held her. Indeed, the victim reported the sexual attack once she had the opportunity. She immediately told a witness about the events that took place while defendant and the victim were in the victim's bedroom, the place where the alleged confinement took place. The victim then went to the Flandreau hospital that same day to have a rape kit administered, and she also reported the incident to the Flandreau police and made a statement to the FBI. The fact that defendant was later acquitted of the sexual assault crime does not negate the fact that the victim intended to report the attack at the time she was confined.

*Ford*, 2012 WL 4443000, at \*2 (footnote omitted). As Ford argues, much of the district court's analysis deals with *Weston's* intent to report a sexual attack, as opposed to evidence proving that *Ford* had the purpose of preventing Weston from reporting a sexual attack. But, in the present case, Weston's intent to report a sexual attack is quite relevant to establishing Ford's subjective purpose to prevent her from reporting a sexual attack. Weston testified that Ford sexually assaulted her, barricaded the door when she tried to leave the room, and prevented her from having access to her cell phone. Weston reported that Ford had sexually assaulted her as soon as she

-11-

had the opportunity to do so. Furthermore, Weston's allegation was corroborated by the testimony of Sherman and Red Earth, photographs, and DNA evidence.

In *Bordeaux*, four men left an all-night drinking party sometime after 6:30 a.m. 84 F.3d at 1546. As they were driving, they observed an injured man, Williams, walking down the road. *Id.* The men stopped and offered Williams a ride to his mother's house. *Id.* However, the driver took the car to a different location, where the occupants exited the car and battered Williams. *Id.* The men then placed Williams back into the car and drove him to another location where they continued the physical assault. *Id.* Two of the four men were convicted of kidnapping, in violation of § 1201(a)(2). *Id.* On appeal, the defendants challenged the sufficiency of the evidence, arguing that "the government did not prove that Williams was held for 'ransom or reward or otherwise,' as required by 18 U.S.C. § 1201(a)." *Id.* at 1548. We found that

> [i]t was reasonable for the jury to infer that the purpose of the kidnapping was to assault Williams and that he was put back in the car to enable the defendants to continue the assault at a more isolated location and thus prevent detection. Both reasons constitute a sufficient benefit to the defendants.

*Id.* Similar to *Bordeaux*, here "[i]t was reasonable for the jury to infer that" Ford's purpose in kidnapping Weston was to prevent Weston from reporting a sexual attack. *See id.* That "reason[] constitute[d] a sufficient benefit to [Ford]" under § 1201(a). *See id.*

Ford again asserts that the verdicts on the sexual abuse and kidnapping counts are inconsistent.

> Even if we characterize the verdicts as inconsistent, "[w]e have previously held, when considering what are characterized as inconsistent

-12-

verdicts, that we only ask whether the government presented sufficient evidence to support the conviction. We are reluctant to delve into the minds of the jurors to determine the reasons for apparently inconsistent verdicts." *United States v. Opare–Addo*, 486 F.3d 414, 416 (8th Cir. 2007) (internal citation omitted).

*United States v. Ironi*, 525 F.3d 683, 689 (8th Cir. 2008). Viewing the evidence in the light most favorable to the guilty verdict, there was sufficient evidence to find Ford guilty of kidnapping. *See Lewis*, 557 F.3d at 612. Consequently, we hold that the district court did not err in denying Ford's motion for judgment of acquittal.

## C. *Motion for a New Trial*

Ford argues that the district court erred in denying his motion for a new trial. He contends that Weston's testimony and the testimony of a hospital worker about Weston's injuries establish only that he involuntarily detained Weston. Additionally, Ford reasserts his argument that his acquittal on the sexual abuse charge requires an acquittal on the kidnapping charge.

> "The decision to grant or deny a motion for a new trial based upon the weight of the evidence is within the sound discretion of the trial court," [and] "[u]nless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002).

*United States v. Mayer*, 674 F.3d 942, 944–45 (8th Cir. 2012) (second alteration in original).

> "[A]n abuse of discretion occurs when a relevant factor that should have been given significant weight is not considered, when an irrelevant or improper factor is considered and given significant weight, or when all proper and no improper factors are considered, but the court in weighing the factors commits a clear error of judgment." *United States v. McNeil*,

90 F.3d 298, 300 (8th Cir.), *cert. denied*, 519 U.S. 1034, 117 S. Ct. 596, 136 L. Ed. 2d 524 (1996) (internal citations omitted); *accord*, *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir.1984).

*United States v. Butler*, 296 F.3d 721, 723 (8th Cir. 2002) (alteration in original). Here, the district court found:

> Ford's argument in support of granting a new trial rests almost entirely on the issue of credibility. Ford argues that the victim's testimony is incredible and that the testimony of the two corroborating witnesses is also incredible.
>
> * * *
>
> Ford does not argue persuasively that the victim's testimony regarding the kidnapping is incredible.

*Ford*, 2012 WL 4443000, at *3.

On appeal, Ford argues that the court improperly considered evidence pertaining to Weston's state of mind as proof that he held her for the purpose of preventing her from reporting a sexual attack. He contends that Weston's testimony "showed *her subjective belief* that [he] prevented her from leaving the bedroom or using her phone," and not that *he* had the subjective purpose of preventing her from reporting a sexual attack. (Emphasis added). But Weston's testimony was relevant and highly probative of Ford's mental state. The district court therefore properly considered Weston's testimony as probative of Ford's motive. Likewise, the court properly considered the testimony of those witnesses who corroborated Weston's testimony.

Addressing Ford's argument that acquittal on the sexual abuse charge requires acquittal on the kidnapping charge, the district court determined that "the kidnapping conviction can stand on its own, and, thus, Ford's argument lacks merit." *Id.* at *4.

-14-

Indeed, the jury could have reasonably believed that Weston wanted to report a sexual attack—and that Ford acted with the purpose to prevent her from doing so—even if the jury was not convinced that the government had proven all of the elements of the sexual abuse count beyond a reasonable doubt. Furthermore, Ford's acquittal on the sexual abuse count imposed no obligation on the court to ignore the testimony, DNA evidence, and photographs that indicated that Ford held Weston for the purpose of preventing her from reporting a sexual attack.

Ford does not convince us that affirming the district court's judgment will result in "'a miscarriage of justice . . . [,] [so] the jury's verdict must be allowed to stand.'" *See Mayer*, 674 F.3d at 945 (quoting *Campos*, 306 F.3d at 579). Consequently, we hold that the district court did not abuse its discretion in denying Ford's motion for a new trial.

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____