# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 8, 2022

Lyle W. Cayce
Clerk

No. 18-50635

United States of America,

*Plaintiff—Appellant*,

*versus*

Samuel Tanel Crittenden,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:17-CR-2039-2

Before Dennis, Elrod, and Costa, *Circuit Judges*.
Jennifer Walker Elrod, *Circuit Judge*:

After a jury convicted Samuel Crittenden of possession with intent to distribute 500 grams or more of methamphetamine, he moved for a new trial under Federal Rule of Criminal Procedure 33(a). Rule 33 "allows a district court to vacate any judgment and grant a new trial if the interest of justice so requires." *Eberhart v. United States*, 546 U.S. 12, 13 (2005) (quoting Fed. R. Crim. P. 33). The district court granted Crittenden's motion and the United States timely appealed.

The panel issued majority and dissenting opinions in August 2020.

No. 18-50635

*United States v. Crittenden*, 971 F.3d 499 (5th Cir. 2020), *withdrawn*, 827 F. App'x 448 (5th Cir. 2020). After further reflection, in October 2020, the panel remanded the case for the limited purpose of allowing the district court to clarify whether it had granted a new trial because the evidence was insufficient to support a conviction or that, despite the sufficiency of the evidence, it "preponderated heavily against the guilty verdict."[*] *See Crittenden*, 827 F. App'x at 449 (citing *United States v. Herrera*, 559 F.3d 296, 302 (5th Cir. 2009)).

On remand, the district court made clear that, though the evidence was sufficient to support a conviction, the court had cautiously reweighed the evidence and found that it preponderated heavily against Crittenden's guilt. Specifically, the district court concluded that the evidence failed to show that Crittenden had knowledge of the nature of the controlled substance he possessed—as was required to convict him of possessing methamphetamine with the intent to distribute. Thus, the district court had concluded that it

---

[*] There are significant differences between finding that the evidence was insufficient to support the verdict and granting a new trial. "In this Circuit, the generally accepted standard is that a new trial ordinarily should not be granted unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict." *United States v. Wright*, 634 F.3d 770, 775 (5th Cir. 2011) (quoting *United States v. Wall*, 389 F.3d 457, 465 (5th Cir. 2004)) (quotation marks omitted). Even where "the evidence is sufficient to support a conviction," the district court may grant a new trial if it "cautiously reweighed" the evidence and concluded that it "preponderated heavily against the guilty verdict." *Herrera*, 559 F.3d at 302. We review a district court's decision to grant a new trial for abuse of discretion. *United States v. Hoffman*, 901 F.3d 523, 552 (5th Cir. 2018).

In contrast, there is insufficient evidence only when, taking all inferences in favor of the verdict, "no rational juror could have found guilt beyond a reasonable doubt." *Id.* at 541 (quoting *United States v. Sanjar*, 876 F.3d 725, 744 (5th Cir. 2017)). When a court finds the evidence insufficient, the defendant must be acquitted. *Burks v. United States*, 437 U.S. 1, 10–11 (1978). Acquittal is required even when the defendant moved only for a new trial. *Id.* at 17. We review *de novo* a district court's holding that the evidence was insufficient to support the jury's verdict. *Hoffman*, 901 F.3d at 541.

No. 18-50635

would be a miscarriage of justice to let the verdict stand and granted Crittenden's motion for a new trial.

We find no error in the district court's decision, which we review for abuse of discretion. *United States v. Hoffman*, 901 F.3d 523, 552 (5th Cir. 2018). Under binding Supreme Court and circuit precedent, a district court is permitted to carefully reweigh evidence, make credibility assessments, and act as a "thirteenth juror" in considering a motion for a new trial. *Tibbs v. Florida*, 457 U.S. 31, 42, 45 n.22 (1982); *see also United States v. Arnold*, 416 F.3d 349, 361 (5th Cir. 2005) (noting that the district "court has the authority to make its own determination regarding the credibility of witnesses" on a Rule 33 motion for a new trial); *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997) (noting that the district court "may weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial").

Binding circuit precedent permits a district court to grant a new trial even where "the evidence is sufficient to support a conviction" but nevertheless "preponderate[s] heavily against the guilty verdict." *Herrera*, 559 F.3d at 302. Here, the district court "did not simply disregard the jury's verdict in favor of one it felt was more reasonable." *Robertson*, 110 F.3d at 1119. Indeed, the district court cautiously reweighed the evidence, determined that a mistake had been committed, and permissibly granted a new trial to "prevent a miscarriage of justice." *Id.* at 1119–20.

\*   \*   \*

The judgment of the district court is AFFIRMED.

No. 18-50635

GREGG COSTA, *Circuit Judge*, dissenting:[1]

The Constitution twice says that juries decide criminal cases. U.S. CONST. art. III, § 2, cl. 3; *id.* amend. VI. The jury right's reappearance in the Sixth Amendment is no mere encore. The Bill of Rights includes the jury right among many guarantees for criminal defendants, whereas Article III requires juries as a structural protection. This original jury requirement ensures that unelected judges are not the only actors in our judiciary. "Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary." *Blakely v. Washington*, 542 U.S. 296, 306 (2004); *see also* AKHIL REED AMAR, AMERICA'S CONSTITUTION: A BIOGRAPHY 237 (2005).

Article III's command that all trials "shall be by Jury" is why, for the first century of our Republic, a defendant could not elect to have a judge decide his fate. *See Thompson v. Utah*, 170 U.S. 343, 353–55 (1898); *Home Ins. Co. v. Morse*, 87 U.S. (20 Wall.) 445, 451 (1874) (citing *Cancemi v. People*, 18 N.Y. 128 (1858)); *see also Patton v. United States*, 281 U.S. 276 (1930) (allowing bench trials); Recent Development, *Accused in Multiple Prosecution Held to Have Absolute Right to Waive Jury Trial*, 59 COLUM. L. REV. 813, 814 (1959) ("Until shortly after the turn of the century, the federal courts and most state courts applied the common law rule that a jury trial can not be

---

[1] I originally issued this dissent when the court affirmed the district court's grant of a new trial in 2020. *See United States v. Crittenden*, 971 F.3d 499 (5th Cir. 2020). The court later withdrew that opinion, noting some confusion about whether the district court's order—which "speaks repeatedly of the insufficiency of the evidence against Crittenden— supported an acquittal for insufficient evidence as opposed to a new trial based on the court's view that the evidence weighed against the verdict. 827 F. App'x 448, 450 (5th Cir. 2020). On remand, the district court confirmed that the assumption in the original panel opinion was correct; the granting a new trial on the ground that the evidence preponderated against the verdict. As I believe the evidence (which of course has not changed since our original ruling) heavily favors the verdict, I maintain this dissent.

waived in a felony case in which the defendant enters a plea of not guilty."). In other words, the jury right is as much about jurors as it is about defendants. *Cf. Powers v. Ohio*, 499 U.S. 400, 409 (1991) (holding that prospective jurors have the right not to be excluded based on race).

The jury's constitutional role in deciding criminal trials leaves little room for judicial second-guessing. Our review of verdicts is therefore quite limited. *See, e.g.*, *Burks v. United States*, 437 U.S. 1, 16–17 (1978). Likewise, the authority to grant a new trial when there is enough evidence to support the verdict, but the judge would weigh the evidence differently, is in some tension with Article III and the Sixth Amendment. As a result, although we review the grant of a new trial only for abuse of discretion, we have repeatedly warned that its discretion is not unbridled. *United States v. Arnold*, 416 F.3d 349, 360 (5th Cir. 2005); *United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir. 1997). Above all, a district court cannot use the new-trial power to "usurp the jury's function." *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005); *see also Arnold*, 416 F.3d at 360; *Robertson*, 110 F.3d at 1118. Only "exceptional" circumstances warrant the strong medicine of a "thirteenth juror." *United States v. Sinclair*, 438 F.2d 50, 51 n.1 (5th Cir. 1971) (Wisdom, J.) (quoting 2 Charles Alan Wright, Federal Practice and Procedure § 553, at 487 (1969)).

To prevent judges from too often taking a seat in the jury box, a district court may grant a new trial only when the evidence weighs so heavily against the verdict "that it would be a miscarriage of justice to let the verdict stand." *Arnold*, 416 F.3d at 360 (citation omitted); *see also* Fed. R. Crim. P. 33(a) (allowing court to grant new trial if "the interest of justice so requires"). Those words bear repeating: a miscarriage of justice. The jury's verdict in this case comes nowhere close to that. Indeed, far from a case in which the evidence "preponderate[s] heavily against the verdict," *Arnold*, 416 F.3d at 360, the great weight of the evidence supports this one.

Beaucoup evidence shows that Crittenden knew he possessed a controlled substance. I'll start with what should end the matter: Crittenden said as much. When agents confronted him about handing the bag to his wife, Carla Dominguez, he told them that he "thought" or "believed" it contained marijuana. The district court reasoned that, "if anything," Crittenden's confession showed merely that he "believed the bags contained marijuana." So apparently the validity of the verdict rendered by twelve citizens turns on whether the defendant said "I believed" instead of "I knew." This belief/knowledge distinction defies real life. People don't use the *mens rea* terms found in the United States Code when confessing. And they often try to hedge their culpability. The jury recognized Crittenden's confession for what it was. It's because of their broader understanding of everyday situations and language that jurors are better positioned to decide the facts than judges trained in the law. As this case shows, we have a proclivity for how-many-angels-can-dance parsing.

Crittenden's wife also admitted Crittenden's knowing participation in drug trafficking. The jury heard recordings of her telling the buyer that she was "working with her husband" and mentioning "trafficking marijuana with her husband."

The statements of Crittenden and his wife are direct evidence of his knowledge. Standing alone they are strong evidence of guilt.

But wait—there's more.

Most drug cases rely on circumstantial evidence to prove state of mind. *See United States v. Cano-Guel*, 167 F.3d 900, 904 (5th Cir. 1999). There was plenty of that here. Yet the district court ignored most of it, focusing only on the confession that the court rationalized away. That failure to grapple with other incriminating evidence alone is an abuse of discretion. *See Hernandez v. Lynch*, 825 F.3d 266, 271–72 (5th Cir. 2016) (holding that

the BIA abused its discretion when it ignored evidence that counseled against its ruling); *United States v. Ouedraogo*, 531 F. App'x 731, 745 (6th Cir. 2013) (unpublished) (reversing grant of new trial because the district court's "rationale . . . overlook[ed], or improperly discount[ed], much of the evidence").

Overlooking the circumstantial evidence is a more glaring problem because it is so compelling. Dominguez testified that she and Crittenden were worried about having the plastic tub in their house because they "assumed that it was drugs." She said that Crittenden wanted the tub out of their house and that he "probably" put its contents into the suitcases because she did not. *See United States v. Ayala-Tapia*, 520 F.3d 66, 69 (1st Cir. 2008) (explaining that defendant's packing heavily wrapped drugs in suitcase could support inference of knowledge because legal substances would not need such heavy wrapping). Crittenden then took the suitcases to his friend's house on Byway. Critically, when Dominguez needed to deliver ten bundles of methamphetamine for the sale, Crittenden went alone to retrieve that exact amount of the drug from the stash—a stash that also included marijuana. The jury understood that it's ridiculous to think that Crittenden randomly picked one of several bags without knowing its contents and happened to select one that contained exactly ten bundles of methamphetamine and no marijuana. Would Crittenden have risked retrieving the wrong drugs or quantity given how dangerous the drug trade is? *Cf. United States v. Araiza-Jacobo*, 917 F.3d 360, 368 (5th Cir. 2019) (explaining that large quantity of drugs—5.1 kilograms of methamphetamine—showed knowledge because "a drug trafficker would not have entrusted the shipment to an untested courier").

The only reasonable inference that can be drawn from this evidence is that Crittenden moved the drugs out of the tub and into the suitcases before he transported them to the Byway residence. Indeed, his wife acknowledged

that was "probably" the case and, other than her, who else in their home would have transferred the drugs from the tub to the suitcases?

Courts in this circuit tell every jury, "The law makes no distinction between the weights to be given either direct or circumstantial evidence." FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL CASES) § 1.08 (2019); *see also McFadden v. United States*, 576 U.S. 186, 192 n.1 (2015). Jurors are not the only people in the courthouse to whom that instruction applies. Failure to give any meaningful weight to the substantial circumstantial evidence of Crittenden's knowledge warrants reversal. *See United States v. McCarter*, 250 F.3d 744, 2001 WL 274753, at *3 (5th Cir. Feb. 23, 2001) (unpublished per curiam) (reversing new-trial grant when district court concluded that evidence of knowledge was circumstantial); *see also United States v. Campos*, 306 F.3d 577, 580 (8th Cir. 2002) (reversing new-trial grant because the district court discounted circumstantial evidence of intent to distribute).

Because granting Crittenden a new trial based on the weight of the evidence defies these basic principles, it should not be surprising that the ruling may not have had much—if anything—to do with the evidence of knowledge. The sequence of events is telling. The district court granted the new trial in a one-page order that said an opinion would follow. That order did not mention anything about weak evidence of knowledge. And despite the fact that the evidence presented at trial would have been freshest in the court's mind when it granted the motion, it took five months to give a reason for doing so.

At a status conference after it finally issued the order explaining the new-trial grant, the court added:

> **I think if it was up to the Fifth Circuit I'm going to get reversed, quite frankly,** but I went over the PSR this

morning.  Mr. Crittenden is facing 292 to 365 months and I think that's the reason I considered . . . granting a new trial because I was very reluctant to issue that type of sentence.

The district court doubled down at Dominguez's sentencing:

> Counsel, as I informed you sometime back, maybe last week, I'm going to grant a new trial for Mr. Crittenden.
>
> I am—his guideline range is 292 to 365 months and he's facing a 20-year mandatory minimum.  I can't . . . even go the 20-year mandatory minimum on him and I'm certainly not going to go 292 months.
>
> He had a limited role in what his wife was doing and she got him into this.  Very limited role.

At the end of the hearing, the district court turned its attention back to Crittenden.  It warned: "Mr. Crittenden, you're facing 292 to 365 months. If you go to trial again and you lose, those guidelines are not going to change and I've given you every opportunity."

There is nothing in either of the district court's discourses about believing ≠ knowing—only a repeated concern about the sentence Congress required.  The district court's concern was not unfounded; Congress has since agreed with its view and reduced the minimum sentence Crittenden would face.  But another standard jury instruction applies to judges as well: When deciding guilt, "[y]ou should not be concerned with punishment in any way."[2]  FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL

---

[2] Under the First Step Act, Crittenden faces a ten rather than twenty-year minimum.  That new law would apply whether we reinstate the guilty verdict from the first trial or the jury at a new trial returns another one.  In either case, the sentencing would

CASES) § 1.22 (2019); *see also United States v. Merlino*, 592 F.3d 22, 34 (1st Cir. 2010) (explaining that a district court's concern about a defendant's lengthy mandatory sentence undermined its decision to grant a new trial).

Much to the district court's surprise, we are allowing it to throw out the jury's verdict. That raises another point. What is going to be different at the next trial? In other words, won't another guilty verdict be just as much of a "miscarriage of justice" as this one? The evidence showing knowledge won't change, so we may be starting a cycle of citizens serving as jurors in this case only to see their work undone. If the court thinks there is actually insufficient evidence to support guilt—a determination that results in an acquittal rather than a new trial—then it should just say so and save future jurors the hassle. Otherwise, it should not require a new trial based on disagreement about state of mind, the quintessential fact issue that juries get to decide. *See Thompson v. Syntroleum Corp.*, 108 F. App'x 900, 902 (5th Cir. 2004) (explaining that summary judgment on "state of mind" questions is "discouraged because intent is a question of fact quintessentially within the province of the factfinder"). Indeed, the majority opinion cites no case affirming a new-trial grant based on a judge's disagreement with how a jury weighed evidence on the inference-laden question of knowledge.

Ultimately, this case pits the deference we owe district judges on discretionary matters against the deference judges owe juries. Both the district judge and the jury saw and heard the evidence. Between the two, the choice is easy given the overwhelming evidence of Crittenden's guilt. I go with the citizens who missed work and had to rearrange family responsibilities because they showed up to do their civic duty. When it comes

---

occur after the effective date of the First Step Act. *See United States v. Gomez*, 960 F.3d 173, 177 (5th Cir. 2020).

No. 18-50635

to commonsense questions like the ones this trial posed, the perspective of a single judge is no match for the collective wisdom that a jury of varied backgrounds and experiences brings to bear.

Yet the district court—now with our court's blessing—concluded that the cross-section of the El Paso community that found Crittenden guilty committed a miscarriage of justice. (I guess I too would have been party to that miscarriage of justice as I think the jury got it right.) This judicial override of the jury's verdict disrespects their service.